**In re TRANSIT GROUP, INC., Debtor.**

**No. 01–12820–6J1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 6, 2002.

---

R. Scott Shuker, Orlando, FL, for debtor.

AMENDED

*MEMORANDUM OPINION SUSTAINING IN PART AND DENYING IN PART UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on October 2, 21, and November 4, 2002, on the Confirmation of Debtor's Amended Joint Plan of Reorganization (Doc. No. 606). The United States Trustee filed an Objection to Confirmation (Doc. No. 669) arguing that the debtor, Transit Group, Inc., granted impermissibly broad non-debtor releases in its plan of reorganization. For the following reasons, the Court sustains in part and denies in part the Trustee's Objection.

Transit operates a large fleet of trucks making deliveries nationwide. When Transit was unable to raise funds necessary to obtain new insurance other than through a debtor-in-possession loan, Transit, and its subsidiary, Transit Group Transportation, decided to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On the petition date, Transit's debts exceeded $75,000,000. After many months of negotiations, Transit filed its amended plan of reorganization. The plan is premised, among other things, on the substantive consolidation of Transit's assets and liabilities and the cancellation of Transit's outstanding preferred and common stock and the stock of its subsidiary, Transit Group Transportation.

The United States Trustee objects to confirmation of Transit's plan because the plan includes several allegedly impermissibly broad releases. The plan seeks to release certain claims against insiders, including Transit's current officers, and a

related affiliate, Land Transportation. The plan also seeks to grant broad releases to non-insiders, including members of the Unsecured Creditors Committee, GE Capital Corporation ("GECC"), and Congress Financial Corporation ("Congress"). The details and scope of each release varies and will be discussed in greater detail later, but, overall, Transit argues that the releases are necessary, fair, and tailored to reflect the contribution each releasee made to Transit's reorganization process.

■■ Whether bankruptcy courts have the power to issue injunctions or grant third party releases discharging the liability of non-debtors centers primarily around conflicting interpretations of sections 105(a) and 524(e) of the Bankruptcy Code.[1] In a Chapter 11 case, upon confirmation of a plan of reorganization, the debts of the bankrupt debtor no longer are subject to collection because of the discharge granted in section 1141(d). A section 1141(d) discharge applies only to claims against the bankrupt debtor. Further, the provisions of the confirmed plan bind all creditors, whether or not any particular creditor or class of creditors objects to the plan. Therefore, in the typical Chapter 11 case, the debtor's liabilities are discharged upon confirmation of the debtor's plan of reorganization. Creditors can expect to receive the payments offered in the confirmed plan and remain generally free to pursue all available remedies against other individuals or entities obligated, along with the bankrupt debtor, for any of the discharged debts.

In the last few years, debtors more frequently are seeking to expand the scope of the discharge to include the release of claims against non-debtor third parties and insiders. Reorganization plans now contain release provisions that purport to permanently discharge the liability of other parties, such as the bankrupt entity's insiders, partners, affiliates, plan funders, or other individuals or entities that contribute to the reorganization process. Some courts allow these expanded releases to non-debtor entities in unusual circumstances; others do not.

■■ The analysis justifying the issuance of these non-debtor releases begins with section 105(a) of the Bankruptcy Code. Section 105(a) grants a court broad equitable power "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As a general rule, however, the equitable powers of bankruptcy courts must be exercised within the confines of the Bankruptcy Code. Thus, section 105(a) cannot be used to authorize any relief that is prohibited by another provision of the Code. Section 524(e) arguably restricts the broad equitable authority that section 105(a) confers on the courts. Section 524(e) provides that, "except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

The courts that refuse to allow non-debtor releases conclude that section 524(e) directly conflicts with any interpretation of section 105(a) that would permit non-debtor releases. *In re Lowenschuss,* 67 F.3d 1394 (9th Cir.1995); *In re Zale Corp.,* 62 F.3d 746 (5th Cir.1995); *In re Western Real Estate Fund, Inc.,* 922 F.2d 592 (10th Cir.1990). At the onset, these courts agree that section 105(a) confers general equitable power to issue injunc-

---

**1.** Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

tions or other orders necessary to enforce the provisions of the Bankruptcy Code. However, section 105(a) cannot be used to authorize relief inconsistent with a more specific provision of the Bankruptcy Code, such as section 524(e). Section 524(e) does not provide for the release of third parties from liability. To the contrary, these courts hold that section 524(e) limits the scope of the discharge to claims against the debtor and conclude that bankruptcy courts lack the power to discharge any claims against non-debtors.

Conversely, courts that allow non-debtor releases find no conflict between sections 105(a) and 524(e). *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir.2002); *In re Continental Airlines*, 203 F.3d 203 (3rd Cir.2000); *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir.1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2nd Cir.1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989). Section 105(a) permits non-debtor releases if the debtor establishes that the releases are necessary or appropriate to carry out the purposes of Chapter 11. Section 524(e) does not expressly state that another party's debt cannot be discharged under a confirmed plan of reorganization. Rather, section 524(e) provides that the discharge of the debtor's liability under a reorganization plan does not, by itself, affect the liability of other parties. Section 524(e) does not overtly bar a plan from providing

non-debtor releases, but simply provides that, if the plan does not otherwise specify such releases, the discharge arising under section 1141 does not affect a creditor's claim against a non-debtor.

■ The Second, Third, Fourth, Sixth, and Seventh, Circuits are pro-release courts holding that bankruptcy courts have the power under section 105(a) to issue permanent injunctions or third party releases under certain factual circumstances.[2] This Court follows these courts and holds that section 524(e) does not act to bar non-debtor releases in appropriate circumstances if the releases are necessary to carryout the provisions of the Bankruptcy Code, as allowed in section 105. The difficulty comes in articulating the appropriate standard to apply in evaluating when the circumstances merit the issuance of non-debtor releases.

The Third Circuit Court of Appeals, agreeing that section 524(e) does not automatically bar the issuance of non-debtor releases, had difficulty articulating an appropriate standard. *In re Continental Airlines*, 203 F.3d 203, 211 (3rd Cir.2000). The Third Circuit refrained from providing any detailed standard, holding that, at a minimum, the debtor must establish through specific factual findings that the releases are both fair and necessary. *In re Continental*, 203 F.3d at 214. In that case, the debtor failed to meet this burden of proof, and the releases were deemed an

**2.** *Id.* The First, Eleventh, and D.C. Circuits do not address directly the issue of whether a bankruptcy court has the authority to permit third-party nondebtor releases or permanent injunctions in a reorganization plan under Chapter 11. However, these courts specifically align themselves with the pro-release courts. *In re Munford, Inc.*, 97 F.3d 449 (11th Cir.1996)(approving third party non-debtor releases in a settlement agreement in a related adversary proceeding); *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 980 (1st Cir.1995)(agreeing with pro-release

courts that in "extraordinary circumstances, a bankruptcy court can grant permanent injunctive relief essential to enable the formulation and confirmation of a reorganization plan"); *In re AOV Indus., Inc.*, 792 F.2d 1140 (C.A.D.C.1986) (affirming confirmation of a plan of reorganization, noting that the district court held that the plan's releases did not constitute an impermissible discharge of non-petitioning third parties, contrary to Bankruptcy Code § 524(e), rendering appellants' challenge to confirmation of the plan moot).

inappropriate exercise of the bankruptcy court's power under section 105.

■ Other courts approving non-debtor releases when confirming a plan of reorganization consider various other factors:

(1) Whether the debtor and the third party share an identity of interest, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

(2) Whether the non-debtor has contributed substantial assets to the reorganization;

(3) Whether the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;

(4) Whether the impacted class, or classes, has overwhelmingly voted to accept the plan;

(5) Whether the plan provides a mechanism to pay for all, or substantially all, of the class, or classes, affected by the injunction;

(6) Whether the plan provides an opportunity for those claimants who choose not to settle to recover in full, and;

(7) Whether the bankruptcy court made a record of specific factual findings that support its conclusions.

*In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir.2002); *In re Continental Airlines*, 203 F.3d 203 (3rd Cir.2000); *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2nd Cir.1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989). All of these courts agree with the Third Circuit that, at a minimum, the non-debtor releases must be necessary and fair. In addition, the courts allowing non-debtor releases hold that the granting of such releases is justified only in unusual circumstances. Routine inclusion of non-debtor releases is not appropriate.

The types of unusual circumstances necessary to justify granting non-debtor releases are varied. One example involved debtors engaged in extensive, nation-wide product liability litigation. In consideration for setting up a large fund to pay claims, courts have allowed non-debtor releases against the debtor's insurers, shareholders, and directors. *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir.2002) (debtor's insurer supplied $2.35 billion to a fund from which product liability claimants were paid.); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989)(debtor's insurer supplied $350 million to a fund from which product liability claimants were paid). Another example of unusual circumstances deemed sufficient to justify non-debtor releases involved the payment of a large settlement to the Securities and Exchange Commission that the non-debtors would not have paid without the *quid pro quo* of a release from further claims. *In re Drexel Burnham Lambert*, 960 F.2d 285, 293 (2nd Cir.1992)(Drexel's management paid $300 million to settlement). In yet another case, the Seventh Circuit Court of Appeals allowed non-debtor releases if the plan provides an alternative means for those claimants who choose not to settle to recover in full. *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir.1993)(according to the terms of the plan of reorganization, each creditor could choose not to grant the releases and pursue their claims against third parties).

■ Based upon these decisions, this Court holds that, in order for a debtor to confirm a plan of reorganization containing a non-debtor release, the debtor must

demonstrate that unusual circumstances exist, and that the non-debtor release is fair and necessary, utilizing those factors listed above that are applicable. A case by case analysis is required. Moreover, allowing non-debtor releases is the exception, not the norm. Debtors should not automatically expect to release officers, directors, insurers, or creditors from future liability, unless some extraordinary reason is proven.

Applying this standard, the Court next will examine the individual non-debtor releases and the related injunctions to see if Transit has met its burden of proof. The only evidence offered by Transit in support of the releases is the affidavit of James Salmon, Transit's Chief Operating Officer. The bulk of the evidence relating to the releases appears in paragraphs 35–39 of the affidavit.

■ In the plan, Transit seeks to release any claims a holder may have against GECC for any act taken in connection with this bankruptcy case or GECC's lending relationship with Transit. The scope of the release includes all claims arising prior to the effective date of the confirmed plan, including claims arising from GECC's prepetition and postpetition conduct. The release also includes a release of acts taken by GECC's agents, including their attorneys and accountants. The only exceptions are for acts taken in gross negligence or willful misconduct, or violations of federal securities law.

Transit argues that the non-debtor releases for GECC are necessary and proper in consideration for GECC's financial contributions and sacrifices made to facilitate Transit's reorganization. As Mr. Salmon stated, "Put simply, without the contributions of GECC, there would be no Plan and no reorganization." The facts support Mr. Salmon's conclusion.

GECC has extended substantial postpetition, debtor-in-possession financing to the debtor, exceeding $16 million. As the debtor needed additional funds to operate, GECC supplied more and more financing, all of which was necessary to give Transit a chance of reorganization. In addition, GECC has agreed to provide Transit with exit financing under the plan. The exit financing will consist of a $22 million revolving loan to fund $7 million for a new insurance program and $15 million for working capital and administrative claims. Further, GECC has agreed to refinance its prepetition secured debt with Transit and to subordinate much of its substantial debt in exchange for a 70% equity interest in the reorganized debtor. GECC has funded this debtor during its Chapter 11 case, has agreed to fund its plan of reorganization through the exit financing, and has made reorganization possible by agreeing to accept equity for debt. Without GECC's concessions and undeniable substantial contributions, Transit would have had no hope of reorganization. GECC is taking a huge risk on the debtor's future profitability while existing creditors will receive distributions under the debtor's plan. For example, GECC has agreed to subordinate its $90 million unsecured Class 7 claim behind the 75 other Class 7 claimants.

GECC has demonstrated a support for Transit that is unusual, given the risky nature of the debtor's business. The Court recognizes that GECC is largely acting from self interest in an attempt to preserve its prepetition investment; however, GECC has gone well beyond mere self-preservation by extending substantial new monies needed to fund this Chapter 11 case and to give the debtor the opportunity to reorganize. GECC has contributed substantial assets to this reorganization and the non-debtor release sought by the debtor is both fair and necessary to the

continuation of the debtor's reorganization process.

■ As to Congress, Transit seeks a non-debtor release similar to that requested for GECC. Congress is the senior, secured lender in this case and holds a first priority lien on virtually all of Transit's assets. Congress' claims exceeds $18 million. Under the plan, the debtor proposes to restructure this indebtedness to repay Congress in full by September, 2005. Transit also agrees to try to sell Land Transportation, and, if the sales price is acceptable to Congress, Congress then will consent to the sale and reduce Transit's outstanding indebtedness by the amount of sales proceeds obtained, anticipated to be $6.5 million. Until Congress is paid in full, Congress will retain all liens on the debtors' property.

During this case, Congress has supplied no unusual financing or assistance of any type to the debtor during the Chapter 11 case. Indeed, Congress has aggressively exercised its dominance as the first priority secured lender throughout the case, offering the debtor headaches, but little help. Congress, understandably, was acting out of its own self-interest to preserve and to protect its investment.

However, Congress also did not do anything that would even remotely justify the extraordinary grant of a non-debtor release requested in the plan. Congress is supplying no new money. Congress is being repaid in a relatively short period of time in the same manner other secured lenders receive repayment. No unusual circumstances exist. A non-debtor release for the benefit of Congress is neither fair nor necessary. Moreover, even the debtor could not articulate a reason why Congress

should benefit from a non-debtor release because Mr. Salmon's affidavit simply is silent on this point.

■ Similarly, the debtor is unable to articulate any basis why members of the unsecured creditor's committee should receive the benefit of a non-debtor release. The debtor in its plan seeks to release non-debtor claims against committee members for acts taken in connection with this Chapter 11 case between the petition date and the effective date of the plan.[3] While it is understandable that creditor's committee members would like to obtain such a broad release, nothing in the Bankruptcy Code supports this type of request. Members of creditors committees, under current law, have very limited responsibility for their actions, omissions, and decisions made while serving on a creditor's committee. Chapter 11 plans should not be used to alter this legal responsibility. (In making this ruling, the Court in no way intends to modify the existing legal standards used to determine liability of members of a creditor's committee.) Indeed, granting such a broad, non-debtor release appears contrary to goals underlying the Bankruptcy Code and, as such, section 105(a) should not be used to grant such a request. The debtor has failed to establish that the non-debtor release relating to the members of the creditor's committee is fair or necessary.

■ Next, Transit seeks a similar non-debtor release on behalf of the debtor's two current officers, Ford Pearson and James Salmon. The release is virtually identical to the ones offered to the members of the unsecured creditor's committee. Transit argues that the non-debtor release is appropriate "to avoid the asser-

---

**3.** The release does exclude claims for acts or omissions taken from gross negligence or willful misconduct, violations of federal securities laws, or liability with respect to Transit's 401(k) plan.

tion of indemnification claims of such persons against the Debtors for liabilities arising prior to the Effective Date."

While the possibility that such indemnification claims conceivably may exist, the debtor has failed to establish that any are imminent or likely. Because there is no imminent threat of any such indemnification claims, there is no real risk that the reorganized debtor will have to pay any indemnity claims made by these officers. Nor is there any evidence regarding the estimated amounts of such claims that Transit could be required to pay. Thus, the debtor's reorganization efforts do not appear impacted. Rather, the request for a non-debtor release appears prophylactic in nature and designed to insure no such indemnification claims are ever asserted, regardless of whether any exist or not or the amount of any potential liability to the reorganized debtor.

■ Non-debtor releases are extraordinary and should be reserved for unusual circumstances. These types of requests seeking to insulate the debtor's officers and directors should not be routinely included in every Chapter 11 plan of reorganization filed by a corporation. The debtor has failed to establish that the non-debtor release as to current officers is necessary or fair.

■ Lastly, Transit requests that Land Transportation, a subsidiary of Transit, should receive a non-debtor release for any claims relating to Land's role as co-maker, guarantor, surety and co-obligor with Transit or any of the other related debtors. The release includes all claims arising prior to the effective date of the plan, excluding any acts that are the result of Land's gross negligence or willful misconduct, violations of federal securities laws, or, as to Congress, the payment of the agreed release price for the sale of Land.

The debtor asserts this non-debtor release is appropriate because the release is limited to co-obligor claims and because GECC's first priority lien exceeding $90 million greatly exceeds any reasonable valuation of Land's assets, approximately $6.5 million. Salmon Affidavit, paragraph 39. Essentially, the debtor argues that a non-debtor release as to Land is justified because the "practical reality" is that no creditor reasonably could obtain a recovery against Land because of GECC's first lien. Although Transit may be correct that no creditor other than GECC could collect against Land, the "practical reality" does not justify the extraordinary grant of a non-debtor release. Simply because a creditor may try to sue Land and fail is not a good reason to deny the creditor the right to try.

■ Nor is the fact that Land is a co-obligor with Transit on certain debts sufficient to justify the grant of the non-debtor release. Land is an affiliate of the debtor. Land could have filed a Chapter 11 case together with Transit. It did not. Now, Land would like to receive the benefit of Transit's plan of reorganization without encountering all the related scrutiny and efforts a Chapter 11 case requires. Rarely, if ever, can one envision a case where a related affiliate of the debtor is entitled to a non-debtor release. Certainly, Transit has failed to demonstrate such a release is fair or necessary in this case.

■ In making this ruling, the Court recognizes that Transit hopes to sell Land and to use the proceeds to pay a portion of Congress' claim. Essentially, by asking for a non-debtor release, Transit is asking this Court to forgive and release Land's obligation to guarantee the repayment of Transit's debts, so that Land will have more value, and so that this sale can proceed. Such a request is improper. Land's

debts are Land's debts, not Transit's. Transit cannot alter Land's obligations in Transit's Chapter 11 case.

Based on the foregoing, the Court sustains in large part the Objection of the United States Trustee. The Court holds that the non-debtor releases and related injunctions for Transit's current officers, Land Transportation, the members of the Unsecured Creditors' Committee, and Congress are not fair, necessary, or supported by any factual findings. However, as to the non-debtor release offered to GECC, the release does appear both fair and necessary. The Court overrules the Objection of the United States Trustee as to that particular release.