[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14517

_____

D. C. Docket Nos. 06-00301-CV-ORL-19-JGG & 04-BK-12409-ABB

IN RE:  DR. GAIL VAN DIEPEN, P.A.

Debtor.

_____

KAREN ROMAGOSA,

Plaintiff-Appellant,

versus

ROBERT E. THOMAS,
Trustee,

Defendant-Appellee,

JOHN MEININGER, SR.,

Respondent.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 31, 2007)**

Before CARNES, WILSON and HILL, Circuit Judges.

PER CURIAM:

Karen Romagosa ("Romagosa") appeals the district court's order affirming the bankruptcy court's approval of a settlement agreement over her objections. We affirm.

## I. BACKGROUND

In 1999, Dr. Gail Van Diepen ("Van Diepen") registered a professional association, Dr. Gail Van Diepen, P.A. ("the P.A.") to do business as a medical provider. Romagosa and Pamela Brown ("Brown") were employees of the P.A. and sued both the P.A. and Van Diepen in a Florida state court for breach of contract and for unpaid wages under the Fair Labor Standards Act ("FLSA").

On August 15, 2003, a jury found only the P.A. liable and awarded $20,694.44 to Romagosa and $17,067.88 to Brown. The state court amended the judgment to include attorneys' fees. Romagosa was awarded $32,030.00 in attorneys' fees and $2,568.23 in costs. Romagosa was awarded a total of $55,292.67. The P.A. appealed the final amended judgment.

In September 2003, Van Diepen resigned from the P.A. and registered Ormond Internal Medicine, LLC ("OIM") with the State of Florida. On September 18, 2003, OIM began conducting business at the same location as the P.A. and

2

utilizing Van Diepen's services. Van Diepen also began liquidating, transferring and disposing the P.A.'s assets and medical equipment, some of which was transferred to OIM.

After learning of the formation of OIM, Brown and Romagosa filed suit pursuant to Florida Statutes § 56.29, Proceedings Supplementary, against the P.A. and impled defendants OIM, Van Diepen, and Oceanfront Investments Group, LLC ("Oceanfront").[1] In this supplementary proceeding, Brown and Romagosa claimed that the P.A., Van Diepen and OIM had fraudulently transferred the P.A.'s assets in order to hinder Brown and Romagosa from executing the FLSA judgment that was entered against the P.A.[2]

On November 16, 2004, the P.A. filed a petition for bankruptcy under Chapter 7 in the Middle District of Florida. Due to this filing, both the P.A.'s appeal of the amended judgment and the state court proceedings brought by Brown and Romagosa were stayed pending the resolution of the bankruptcy petition. Romagosa moved to lift the stay of her underlying state court proceedings, but the motion was denied.

---

[1] Romagosa and Brown also filed suit against the P.A., Van Diepen, OIM, and Oceanfront in Florida state court pursuant to Florida's Fraudulent Transfer Act, Florida Statutes §§ 726.01 - 726.201.

[2] Romagosa's section 56.29 complaint did not specifically allege separate claims, such as a fraudulent conveyance claim and a piercing the corporate veil claim.

The bankruptcy court ordered the bankruptcy trustee for the P.A., Robert E. Thomas ("the Trustee"), to evaluate the claims against the P.A. as well as the claims against Van Diepen, OIM, and Oceanfront. The Trustee identified potential claims against Van Diepen and OIM including avoidance of fraudulent transfer, preferential transfer, breach of fiduciary duty, and piercing the corporate veil. The bankruptcy court found that these claims constituted property of the estate pursuant to 11 U.S.C. § 541(a).

In October 2005, the Trustee entered into a negotiated settlement agreement with OIM, Van Diepen, and Oceanfront. The agreement stated that Thomas as trustee "now succeeds to and is the owner of and vested with all post-judgment supplemental proceeding claims now pending in the Circuit Court of Volusia County, Florida against Van Diepen and OIM in connection with the pre-petitioner transfer of assets and payment of the loans back to Van Diepen."

The agreement provided that Van Diepen would pay the bankruptcy estate $45,000.00. In exchange, the agreement stated that:

> The Bankruptcy Court Order . . . shall specifically enjoin Romagosa, Brown, Aaron Cohen as Trustee of the estate of Brown,[3] and their attorneys in State Circuit Court actions and the supplemental proceedings from further prosecuting any claims against Van Diepen, OIM, and Oceanfront pursuant to Florida Statutes Chapter 56 and Florida Statutes Chapter 726, or existing Florida case law utilizing legal or equitable principles, to the extent the

---

[3] On January 20, 2004, Brown filed for bankruptcy.

4

Bankruptcy Court's jurisdiction and legal authority to issue such an order.

The Trustee filed a Motion for and Notice of Proposed Compromise of Controversy pursuant to Federal Rule of Bankruptcy Procedure 9019. In his motion, the Trustee detailed his findings. First, the Trustee identified potential claims against Van Diepen and OIM.[4] The Trustee valued the preferential claim against OIM at $55,000.00. In evaluating the strength of the other claims, the Trustee found that there were some pre-petition transfers from the P.A. to OIM, but he indicated that the majority of the assets were either leased assets or Van Diepen's personal services. The Trustee did not think that these assets could be liquidated and he could justify lengthy litigation. The Trustee also found that there was not a high chance of success of prevailing on the individual claim of breach of fiduciary duty against Van Diepen or the claim of piercing the corporate veil of OIM. The Trustee also stated that pursuing these claims would be costly to the estate and most likely exceed the $45,000.00 proposed in the settlement agreement. He determined that a settlement was in the best interest of all the creditors. The settlement was contingent upon the Trustee successfully dismissing with prejudice the supplementary proceedings pending in state court.

On February 9, 2006 after conducting an evidentiary hearing on the motion

_____

[4] The Trustee did not identify any viable claims against Oceanfront, and Romagosa has presented no substantive argument that Oceanfront should be held liable for the debts of the P.A.

and Romagosa's objections, the bankruptcy court approved the settlement agreement and overruled the objections. In its order, the bankruptcy court noted that the outcome of the litigation was uncertain and would be lengthy and costly. The bankruptcy court also found that the settlement did not fall below the lowest point on the range of reasonableness. The district court affirmed, and Romagosa appeals the district court's order.[5]

## II. STANDARDS OF REVIEW

We review whether the bankruptcy court had jurisdiction to approve the settlement agreement that enjoined a creditor's state law claims *de novo*. *See In re Munford, Inc.*, 97 F.3d 449, 453 (11th Cir. 1996). We review the approval of a settlement agreement under the abuse of discretion standard. *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000).

## III. DISCUSSION

A.    Authority to Approve the Settlement Agreement

Romagosa argues that the bankruptcy court did not have the authority to approve a settlement agreement that included a broad release of third party non-debtors and that enjoined Romagosa from pursuing her state law claims against those third party non-debtors. After receiving the FLSA judgment against the P.A.

---

[5] Brown did not join in the appeal.

6

in state court, Romagosa and Brown filed supplemental proceedings against the P.A., Van Diepen, and OIM pursuant to Fla. Stat. § 56.29. Section 56.29(6)(b) states that "[w]hen any gift, transfer, assignment or other conveyance of personal property has been made or contrived by defendant to delay, hinder or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void . . . ." Fla. Stat. § 56.29(6)(b). The purpose of § 56.29 is to assist judgment creditors in reaching the assets of judgment debtors. *Morton v. Cord Realty, Inc.*, 677 So.2d 1322, 1324 (Fla. Dist. Ct. App. 1996).

Once the P.A. filed for bankruptcy, Romagosa's supplementary proceeding action was properly stayed by the bankruptcy court. *See In re Saunders*, 101 B.R. 303, 306 (Bankr. N.D. Fla. 1989) (holding that the plaintiff's § 56.29 action against the defendant for alleged fraudulent transfers was subject to the automatic stay provision, 11 U.S.C. § 362(a)). The bankruptcy court ordered the Trustee to evaluate the claims asserted by Romagosa.

Pursuant to 11 U.S.C. § 544, the Trustee has the power to avoid the transfer of property of the debtor that is voidable under state law. *Munford Inc. v. Valuation Research Corp.*, 98 F.3d 604, 609 (11th Cir. 1996). The bankruptcy code also permits the Trustee:

> to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors,

7

not just those who win a race to judgment. A trustee acting under section 544 acts as a representative of creditors, and any property recovered is returned to the estate for the eventual benefit of all creditors.

*In re Zwirn*, No. 04-40306, 2007 WL 549328, at \*4 (Bankr. S.D. Fla. Feb. 21, 2007) (internal quotation marks and citations omitted). The Trustee identified various fraudulent conveyance claims against Van Diepen and OIM and proposed to settle those claims in lieu of litigating them. Since any money recovered from these claims is property of the estate, the Trustee had the power to assert these claims on behalf of the P.A. for the benefit of all creditors. Therefore, the bankruptcy court had the authority to approve an agreement settling these claims and an agreement that would enjoin Romagosa from pursuing these same claims against Van Diepen and OIM in state court.

Romagosa argues that the bankruptcy court did not have authority to include in a settlement agreement a release of third party non-debtors, such as Van Diepen and OIM, where their property is not part of the bankruptcy estate. Although we agree with this proposition, any money recovered from the fraudulent conveyances from the P.A. to Van Diepen and to OIM is property of the estate. Therefore, the bankruptcy court had jurisdiction over any claims that would recover such property, and it had authority to enjoin Romagosa from pursuing these claims against Van Diepen and OIM in state court. *See id.*; *see also* 11 U.S.C. § 541.

8

Romagosa also argues that the FLSA judgment she obtained in state court holds Van Diepen jointly and severally liable for the judgment entered against the P.A., and the bankruptcy court did not have the authority to bar her from pursuing this form of recovery. While this claim does not appear to have been pursued by Romagosa in her state court action, we agree with Romagosa's argument. If the FLSA state court judgment entered against the P.A. actually holds Van Diepen jointly and severally liable for the judgment, then Romagosa can pursue that claim independent of the P.A. and personally against Van Diepen, because any money recovered from this claim would not be trust property. However, whether or not the FLSA judgment holds Van Diepen personally liable is for the state court to decide.

Accordingly, we find that the bankruptcy court had the authority to approve the settlement agreement of the fraudulent conveyance claims that the Trustee pursued on behalf of the P.A. and for the benefit of all creditors. Furthermore, we find that the bankruptcy court had the authority to enjoin Romagosa from pursuing these same claims against Van Diepen and OIM in state court.[6]

---

[6] As previously stated, Romagosa's §56.29 complaint did not allege separate claims. Therefore, we can not be certain as to the extent of her claims against Van Diepen and OIM. However, the bankruptcy court only had the authority to approve an agreement settling claims and authority to enjoin Romagosa from pursuing claims that the Trustee had standing to pursue on behalf of the P.A. for the benefit of all the P.A.'s creditors. The record is not clear as to whether the bankruptcy court actually entered an order enjoining Romagosa from pursuing her state court claims.

9

B.      Approval of the Settlement

Romagosa argues that the bankruptcy court abused its discretion in approving the settlement agreement by releasing third party non-debtors and improperly applying the *Justice Oaks* factors.  *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990)

1.      Release of Third Party Non-Debtors

Romagosa cites *In re Transit Group Inc.,* 286 B.R. 811, 817 (Bankr. M.D. Fla. 2002) for the proposition that the release of third party non-debtors in bankruptcy cases is the exception and should be done only under "unusual circumstances."  However, as the district court correctly noted, *In re Transit* is inapplicable to this case.  *In re Transit* dealt with a confirmation of a reorganization plan under Chapter 11, not a liquidation under Chapter 7.  *Id*. at 814.  In a Chapter 11 case, upon the confirmation of a plan of reorganization, the debts of the bankrupt debtor are no longer subject to collection and are discharged. *Id*. at 815.  In *In re Transit*, the debtor sought to expand the scope of the discharge to include non-debtor third parties.  The bankruptcy court noted that a problem with releasing third party non-debtors liability in approving a reorganization plan of the debtor is that under 11 U.S.C. § 524(e) the "discharge of the debt of debtor does not affect the liability of any other entity on . . .  such debt."  *Id*.  The court

10

stated that since section 524(e) does not provide for a release of third parties from liability, a release of non-debtors can only be done in unusual circumstances. *Id*. at 817.

Unlike a situation in a case involving the reorganization plan of a debtor, the settlement agreement in this case does not discharge the P.A.'s debts. To the contrary, the agreement supplies the bankrupt estate with additional funds to pay the P.A.'s creditors. Furthermore, unlike *In re Transit*, the Trustee had the sole authority to prosecute, and therefore settle, the fraudulent conveyance claims against Van Diepen and OIM. Therefore, the factors that the bankruptcy court discussed in *In re Transit* as concerning a release of a third party non-debtor's liability to creditors under a proposed reorganization plan are not applicable to the circumstances in this case.

### 2. *Justice Oaks* Factors

Romagosa argues that the bankruptcy court did not properly evaluate the *Justice Oaks* factors. When a bankruptcy court decides whether to approve a proposed settlement agreement, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

11

*In re Justice Oaks*, 898 F.2d at 1549. A bankruptcy court is not obligated to actually rule on the merits of the various claims "only the *probability* of succeeding on those claims." *Id*. (emphasis in original). "The approval of a compromise is within the sound discretion of the bankruptcy judge . . . and [an appellate court] will not overturn a decision to approve a compromise absent a clear showing that the bankruptcy judge abused her discretion." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995).

Romagosa argues that the bankruptcy court did not properly consider the strength and the monetary value of her claims against Van Diepen and OIM. The Trustee found a viable preferable transfer claim estimated to be worth about $55,000, but offered to settle that claim and all other claims for $45,000 in lieu of the uncertainty and high costs of litigation. The Trustee did not find that the piercing of the corporate veil and the fraudulent transfer claims had much if any value due to the difficulty in litigating such claims and because of the facts of the case. However, Romagosa cites to *Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145 (Fla. Dist. Ct. App. 1995) for the proposition that her claims were not only strong, but she was likely to recover. The facts in *Munim* are similar to the facts of our case.

In *Munim*, the plaintiff was a doctor who was employed by a medical firm

owned and operated by Dr. Munim. *Id.* at 148. The plaintiff was fired by the firm, and sued for breach of contract. *Id.* The plaintiff won and was awarded a substantial money judgment against the firm. *Id.* Twelve days after the entry of the final judgment, Dr. Munim incorporated a new medical firm. *Id.* at 150. The old firm stopped seeing patients and rendering medical services. The new firm commenced seeing patients the next day. *Id.* at 150-51. The new firm was located in the same office building and used the same equipment. *Id.* at 151. The staff and patient files were the same. *Id.*

The plaintiff brought supplementary proceedings against the new firm for fraudulent transfer of assets, *de facto* merger and/or mere continuation of business. *Id.* at 150. The trial court granted summary judgment in favor of the plaintiff on all his claims, and the Florida district court of appeal affirmed. *Id.* at 155. Based on this case, Romagosa argues that she had a high probability of success in litigating her claims and that the litigation was not complex.

While *Munim* ended with a summary judgment, Romagosa's state court case was only scheduled for a final summary judgment hearing. We can only speculate what the state court would have ruled based on the facts of the case before it. Furthermore, both the fraudulent transfer and piercing the corporate veil claims are based on fraud. *See Carnes v. Fender*, 936 So.2d 11, 12-13 (Fla. Dist. Ct. App.

13

2006). "Ordinarily, the issue of fraud is not a proper subject of a summary judgment. Fraud is a subtle thing, requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud." *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So.2d 266, 271 (Fla. Dist. Ct. App. 2002) (citation omitted).

Unlike *Munim*, most of the P.A.'s assets were leased. The court in *Munim* also found as a substantial asset the medical association's patient list, which "are bought and sold for consideration all the time." *Munim,* 648 So.2d at 153. Since the decision in *Munim*, the sale of a medical association's patient list is restricted under HIPPA. The bankruptcy court is not required to rule on the merits, and must look only to the probabilities. *In re Justice Oaks*, 898 F.2d at 1549. Furthermore, the bankruptcy court must also consider the interests of all the creditors. The P.A. had five creditors and only Romagosa objected to the settlement agreement. Romagosa claims that she and Brown represent the vast majority of the unpaid claims against the P.A., and since Brown is in bankruptcy, she is not willing to fight for additional assets. However, it is within the bankruptcy court's discretion to determine whether settling the claims, in light of the uncertainties and costs of litigation, was in the best interest of all the creditors, not just creditor Romagosa. As such, we do not find that the bankruptcy court abused its discretion in finding

14

that the probabilities as to the possible outcome of the state court litigation were uncertain, continued litigation would be costly, and collection of any assets would be difficult.

## IV. CONCLUSION

We find that the bankruptcy court had the authority to approve an agreement settling claims that the Trustee brought on behalf the P.A. for the benefit of all the P.A.'s creditors. The bankruptcy court also had the authority to enjoin Romagosa from pursuing those same claims in state court. Furthermore, we find that the bankruptcy court did not abuse its discretion in approving the settlement agreement. Accordingly, we affirm the district court's order affirming the bankruptcy court's approval of the settlement agreement.[7]

**AFFIRMED**.

---

[7] The Trustee filed a motion to strike two issues raised in Romagosa's brief: (1) whether the FLSA imposes individual liability on Van Diepen, and (2) whether the "unusual circumstances" test applies to a release of non-debtors in a Chapter 7 case. The Trustee argues that these issues were not raised before the district court. The Trustee's motion is denied.

15