**In re GUNNALLEN FINANCIAL, INC., Debtor.**

No. 8:10–bk–09635–MGW.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 4, 2011.

**910**

Harley E. Riedel, Becky Ferrell–Anton, Amy Denton Harris, Daniel R. Fogarty, Stichter, Riedel, Blain & Prosser, P.A., William J. Schifino, Jr., Williams Schifino Mangione & Steady PA, Burton Wiand, Wiand Guerra King PL, Tampa, FL, Anthony Paduano, Leonard Weintraub, Paduano & Weintraub LLP, New York, NY, for Debtor.

Roberta A. Colton, William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, et al., Tampa, FL, for Liquidating Trustee/Creditor Committee.

Soneet R. Kapila, Fort Lauderdale, FL, Liquidating Trustee.

Denise E. Barnett, Cynthia Burnette, United States Trustee, Tampa, FL, for U.S. Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO APPROVE A SETTLEMENT AGREEMENT THAT PROVIDES FOR ISSUANCE OF BAR ORDER

MICHAEL G. WILLIAMSON,
Bankruptcy Judge.

Prior to its bankruptcy filing, the Debtor was a broker-dealer engaged in the business of effectuating transactions on behalf of customers for the purchase and sale of securities. The Liquidating Agent, who serves as estate representative under the Debtor's confirmed plan of liquidation, has filed a motion seeking approval of a settlement with American International Specialty Lines Insurance Company ("AISLIC"), one of the Debtor's prepetition liability insurers ("Motion"). AISLIC provides defense and indemnity coverage to the Debtor (including its registered representatives, officers, and directors) for certain claims asserted by the Debtor's customers arising from securities transactions, and reported to AISLIC, during a specific "claims made" policy period (such covered claims, "Securities Claims," and such customers, "Securities Claimants").

The settlement provides that AISLIC will pay to the Liquidating Agent approximately $1.7 million, the amount of proceeds remaining under the policy. Under the liquidating plan confirmed by the Court, the insurance proceeds will be used to make partial distributions to the Securities Claimants, and ten percent of the proceeds will go to the class of general unsecured creditors. Proceeds also will be used to pay the fees and expenses of a claims arbitrator who, pursuant to the plan, will determine the allowed amount of the Securities Claims for purposes of receiving plan distributions.

The main source of controversy surrounding the settlement is the requirement that this Court enter a bar order. The bar order would permanently enjoin the Securities Claimants from continuing their pending arbitration and litigation cases against the registered representatives, officers, and directors who allegedly caused their losses. The Securities Claimants are given no right to opt out of the settlement, and none of the nondebtors who would be protected under the bar

order are contributing any money to the settlement. In short, the settlement compels the claimants to forego all remedies against nondebtors and accept a fractional distribution on their claims (less than 25 percent) from the insurance. The Motion is opposed by the U.S. Securities and Exchange Commission ("SEC") and numerous Securities Claimants whose actions against nondebtors would be terminated if the settlement between the Liquidating Agent and AISLIC is approved.

Applying the *Justice Oaks* standard of review, the Court concludes that the settlement should not be approved because it fails to meet the fair and equitable standard for approval. The harm that will be imposed upon the Securities Claimants as a result of the bar order outweighs any benefit the settlement provides with respect to the proposed disposition of policy proceeds. For these reasons, the motion will be denied.

### Findings of Fact

#### A. *General Background*[1]

Prior to filing bankruptcy, the Debtor was a broker-dealer with approximately 585 registered representatives located in 180 branch offices in 37 states. Beginning in about 2007, a substantial number of the Debtor's customers began filing litigation and arbitration proceedings against the Debtor, the Debtor's officers and directors, and numerous registered representatives and other individuals. The claimants in these actions contend, among other things, that the individual defendants engaged in unauthorized trades, churned customer accounts, made unsuitable investments, and fraudulently purchased fictitious securities.

By March 2010, customers had filed more than 400 actions against the Debtor and roughly 62 of the Debtor's registered representatives and other individuals. The potential liabilities from these claims caused the Debtor to be out of net capital, which led regulators to place the Debtor into liquidation mode only. The Debtor was forced to terminate all operations in March 2010, and on April 26, 2010, it filed a voluntary Chapter 11 petition.

On October 18, 2010, this Court entered an order confirming, as modified, the Debtor's liquidating plan. The plan appoints Soneet Kapila as Liquidating Agent to administer the Debtor's remaining assets, including any of the Debtor's rights under insurance policies. Although no settlements were approved as part of the confirmation process, the plan clearly anticipated that the Liquidating Agent would negotiate and bring such settlements to court for post-confirmation consideration and review. The plan became effective on November 1, 2010.

#### B. *The AISLIC Insurance Policy*

Prior to the bankruptcy, AISLIC issued a Securities Broker/Dealer's Professional Liability Insurance policy to GunnAllen Holdings, Inc. ("GAH"),[2] the Debtor's parent company.[3] The insureds covered by the policy include GAH, the Debtor, and the Debtor's registered representatives,

---

1. The background facts in this section are taken from the Debtor's Case Management Summary (Doc. No. 18), the Debtor's Schedules, as amended (Doc. Nos. 58, 125, 192 and 193) the Statement of Financial Affairs, as amended (Doc Nos. 59 and 194), and other filings of record in this case.

2. Liquidating Agent's Ex. 1.

3. List of Equity Security Holders (Doc. No. 60).

officers, directors and employees.[4] It is a "claims made" policy that provides defense and indemnity coverage for the Securities Claims asserted, and reported to AISLIC, during the period from November 30, 2008 through November 30, 2009. It affords up to $3.0 million in coverage (subject to various limits and exclusions) and is a "wasting" policy, where each dollar spent on defense costs reduces the amount available to pay claims.

According to AISLIC, a total of 32 customer claims were reported during the policy period and are covered by the policy.[5] Nine claims have been resolved—six pre-bankruptcy and three post-bankruptcy. Of the 23 matters still open, 18 of them involve claims against the Debtor and at least one registered representative, officer, or director.[6] The other five matters involve claims only against the Debtor. The claims seek damages for losses caused by the respondents' negligence, breach of fiduciary duty, and violations of state or federal securities laws.[7]

At the hearing, an AISLIC representative testified that it became apparent around the time of the bankruptcy filing that the projected allowed amount of the Securities Claims would exceed the policy limits. Moreover, since the bankruptcy filing, policy proceeds have been expended because three cases have settled, defense costs are being incurred by nondebtor co-insureds in cases that are not stayed, and AISLIC has funded those settlements and defense costs.[8] AISLIC estimates that approximately $1.3 million has been paid (or incurred) under the policy, leaving roughly $1.7 million in available coverage.[9] Although the Debtor does not require defense coverage (because all actions against it are stayed), the Debtor is entitled to indemnity coverage for its liability on the 23 remaining Securities Claims.[10]

## C. *The Proposed Settlement* [11]

Since his appointment, the Liquidating Agent has worked to resolve the Debtor's claims, as an insured, under the policy. Acknowledging that the Debtor's projected liability on the Securities Claims greatly exceeds the $1.7 million in remaining proceeds, AISLIC has agreed to pay the full remaining amount to the Liquidating Agent—with one catch. AISLIC will provide indemnity coverage to the Debtor only if this Court enters a bar order permanently enjoining the Securities Claim-

**4.** Liquidating Agent's Ex. 1, at 3.

**5.** AISLIC's approval of coverage for these claims is subject to a reservation of rights. Six additional claims were asserted against the policy, but were denied by AISLIC for being either outside the policy coverage or the policy period.

**6.** A list of the open Securities Claims is attached to the Settlement Agreement (Liquidating Agent's Ex. 2).

**7.** *See* AISLIC's Joinder in Liquidating Agent's Motion for Approval of Global Settlement (Doc. No. 522) at 2.; AISLIC's Motion for Relief from the Automatic Stay to Permit Insurer to Advance Settlement Amounts (Doc.

No. 449) at 2; AISLIC's Emergency Motion for Relief from the Automatic Stay To Permit Advance of Defense Costs (Doc. No. 62) at 2.

**8.** *See* Orders Granting Relief from the Automatic Stay to Fund Settlements (Doc. Nos. 259 and 497), and various applications for reimbursement of defense costs (Liquidating Agent's Ex. 6).

**9.** Liquidating Agent's Ex. 5.

**10.** Liquidating Agent's Ex. 1, at 1.

**11.** The settlement agreement was entered into evidence as Liquidating Agent's Ex. 2.

ants from continuing their pending actions against all other insureds.[12] Simply put, AISLIC will not pay the policy proceeds to the Liquidating Agent unless all Securities Claims against the other insureds are permanently barred.

If the settlement is approved, the plan provides that the proceeds would be distributed primarily to the Securities Claimants, but ten percent (or roughly $175,000) would be distributed to the class of general unsecured claims.[13] Proceeds also would be used to pay certain fees and expenses incurred by the claims arbitrator under the plan.[14] The Court has not been provided with any projection of the arbitrator's fees, but it appears that no more than $1.5 million in proceeds would be left to distribute to Securities Claimants if the settlement is approved.

At the hearing, AISLIC's representative testified that the insurance proceeds would pay roughly 25 percent of the projected allowed amount of the Securities Claims.[15] This projection, however, does not take into account the 10 percent carve-out for general unsecured creditors or payment of the arbitrator fees. According to AISLIC, the 23 unresolved Securities Claims total $6,861,193.[16] As such, Securities Claim-

ants would receive approximately 21.9 percent (*i.e.*, $1.5 million/$6,861,193) of their claims from the insurance if the settlement is approved. The bar order would prevent the claimants from pursuing any further recoveries from nondebtors.

### D. *Positions of the Parties*

In support of the settlement, the Liquidating Agent and AISLIC contend that the settlement is fair and equitable because it will allow the remaining policy proceeds to be paid to Securities Claimants rather than exhausted on defense costs, and will prevent a "race to the courthouse," which would occur if the settlement is not approved. The Liquidating Agent acknowledges that barring all Securities Claims against nondebtors is not the "preferable" way to resolve the Debtor's coverage claims under the policy, but asserts that AISLIC will not settle any other way.[17] AISLIC defends its position by explaining that it has a duty to settle as many claims as possible within policy limits, and thus, it can settle the Debtor's claims under the policy only if all other insureds are released.

The motion is opposed by the SEC,[18] and of great importance, a substantial

---

**12.** Liquidating Agent's Ex. 2, at 7, 9.

**13.** *See* Plan of Liquidation (Doc. No. 266) at 31.

**14.** *Id.* The claims arbitrator is the individual appointed under the plan to determine the allowed amount of each Securities Claim (for purposes of plan distributions only) unless a claimant elects to have its claim estimated by the bankruptcy court pursuant to Section 502(c) of the Bankruptcy Code. *Id.* at 37–38.

**15.** *See also* Liquidating Agent's Ex. 5.

**16.** *Id.* For purposes of this ruling, the Court will assume this figure to be correct. The

Court notes, however, that only six of the twenty-three Securities Claimants have filed proofs of claim in this case, and those six claims, by themselves, total more than $13.5 million. *See* Liquidating Agent's Ex. 9 (Proofs of Claim Nos. 12–1, 16–1, 24–1, 53–1, 87–1, and 100–1).

**17.** *See* Liquidating Agent's Supplemental Memorandum of Law (Doc. No. 515) at 9.

**18.** The SEC does not represent any Securities Claimants, but has opposed the settlement to protect its enforcement interests and because of the strong public policy considerations involved. Both the Liquidating Agent and

number of the Securities Claimants. The Court received written objections from seven Securities Claimants,[19] and two more made appearances through counsel to voice opposition.[20] Only one attorney representing former customers supports the settlement, but it is not clear to the Court whether those customers have claims covered by the AISLIC policy or whether their nondebtor claims have any value (so insurance may be their sole recourse in any event). The Court is unaware of any Securities Claimant with valuable claims against a nondebtor who favors the settlement.[21] The objecting parties assert that the bar order fails the fair and equitable test because it is not necessary to resolve the Debtor's claims under the policy, and the harm caused by the bar order greatly outweighs any benefit provided by the settlement.

### Conclusions of Law

A. *Jurisdiction.*

■ As a preliminary matter, the Court finds that it has jurisdiction to adjudicate the Motion and to issue the bar order incorporated in the Settlement. The

AISLIC have clarified that the bar order, if entered, would not apply to the SEC.

19. *See* Doc Nos. 499, 501, 503, 504, 505, 506, and 528.

20. Informal objections were asserted by Securities Claimants Ronald T. Provenzano and Richard Dvorak.

21. Many of the Securities Claimants are individuals residing in other states who have not previously retained bankruptcy counsel to appear in these proceedings. Indeed, only six Securities Claimants have filed a proof of claim in the case. Under these circumstances, the Court does not assume that a particular claimant's failure to object to the settlement means that the claimant supports it.

policy is property of GunnAllen's bankruptcy estate.[22] GunnAllen is specifically named as an additional insured, and depletion of the proceeds has and will continue to have a direct impact on the estate.[23] The policy and GunnAllen's rights to the proceeds of the policy were effectively transferred to the estate on confirmation [24] and the Liquidating Agent tasked with the authority to assume control and administer any proceeds of the policy.[25] This Court has retained jurisdiction to effectuate that administration.[26]

■ Jurisdiction can also be found in 28 U.S.C. § 157. The pending arbitrations give rise to related proceedings and potential related proceedings that directly impact administration of the Liquidating Estate, thus creating proceedings within this Court's jurisdiction.[27] The test is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy," that is, if the outcome of the action "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of

22. 11 U.S.C. § 541(a); *In re SN Liquidation, Inc.*, 388 B.R. 579 (Bankr.D.Del.2008).

23. *See generally In re Downey Financial Corp.*, 428 B.R. 595 (Bankr.D.Del.2010).

24. Plan ¶ 8.2.3.

25. *Id.* at ¶ 8.5.2(vi).

26. *Id.* at art. 13.

27. *In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268 (Bankr.S.D.Fla.2010)(citing *In re Munford, Inc.*, 97 F.3d 449 (11th Cir.1996) and *In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir.1990)).

the bankrupt estate."[28] The pending FINRA arbitrations and lawsuits filed against GunnAllen and the individual insureds certainly have a "conceivable" effect on the administration of the estate. The Securities Claims impact the assets available to the estate and the amount of the claims to be administered by the Liquidating Agent. Finally, the objectors have filed proofs of claim, subjecting themselves to the jurisdiction of this Court for purposes of allowance and payment of their claims.

## B. Standards for Approving the Settlement and Bar Order.

The standard in this Circuit for approving a bankruptcy settlement requires analyzing the four *Justice Oaks* factors.[29] The factors are: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.[30] When a bankruptcy settlement also seeks entry of a bar order, the bankruptcy court must also determine whether the bar order is fair and equitable to the parties whose claims will be enjoined.[31] The Liquidating Agent, as proponent, has the burden of establishing that the settlement and bar order meet the standards for approval.[32]

In the Eleventh Circuit, the authority and standards for approving a settlement that incorporates a third party release or bar order are well established. *In re Munford, Inc.*[33] is the starting point of the analysis. The court in *Munford* approved a bar order to effectuate a settlement and held that 11 U.S.C. § 105(a) and Fed. R.Civ.P. 16 authorized bankruptcy courts to enter bar orders to facilitate settlements. The bar order in *Munford* extended to non-settling defendant claims for contribution and indemnification against a settling defendant, both non-debtors.[34] More recently, in *In re HealthSouth Corp. Securities Litigation*,[35] the Eleventh Circuit approved a securities settlement in a non-bankruptcy case. The settlement included a bar order designed to prevent the non-settling insured CEO from asserting claims against a settling insurance company and indemnification claims against the settling defendant. In both cases, in approving the settlement, the court observed that a settlement incorporating a bar order should not be approved unless it is fair, adequate, and reasonable.[36]

## C. The Justice Oaks *Factors Do Not Support Approving The Settlement.*

The claim actually being resolved under the settlement is the Liquidating Agent's claim for indemnity coverage under the policy. To settle that claim, AISL-IC has agreed to pay all remaining policy

---

**28.** *Munford,* 97 F.3d at 453.

**29.** *See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir.1990).

**30.** *Id.* at 1549 (citations omitted).

**31.** *Munford,* 97 F.3d at 455.

**32.** *See In re Kay,* 223 B.R. 816, 819 (Bankr. M.D.Fla.1998).

**33.** 97 F.3d 449 (11th Cir.1996).

**34.** *Id.*

**35.** *In re HealthSouth Corp. Securities Litigation,* 572 F.3d 854 (11th Cir.2009).

**36.** *Id.* at 859.

proceeds to the Liquidating Agent. Assuming the Liquidating Agent has no other claims under the policy or against AISLIC,[37] the settlement provides the estate with the maximum recovery possible. From that perspective, the first three *Justice Oaks* factors favor approving the settlement, because the estate is not compromising any rights in order to receive the full remaining benefits under the policy.

The bar order, however, significantly alters the analysis because it places the real burden of the settlement upon the Securities Claimants, who neither are parties to the agreement nor have any right to opt out. In essence, the Liquidating Agent is settling the Securities Claimants' pending actions against nondebtors, not any right or claim of the liquidating estate.[38] Under these unique circumstances, the Court must place great weight on the fourth *Justice Oaks* factor.[39]

In this respect, the Court must determine whether the bar order is fair and equitable to the Securities Claimants.[40] The *Munford* court found that the bar order in that case was fair and equitable because it granted the nonsettling defen-

dants the right to assert a dollar-for-dollar reduction, based on the amount of the settlement payment, against any liability they may have.[41] Thus, even though the nonsettling defendants were barred from later suing the settling defendants for contribution based on their relative fault, the nonsettling defendants were allowed to apply the settlement amount as a credit against any liability they may have to the debtor. The court found that the settling defendants had little ability to pay more than the settled amount; thus, the bar order had little impact on the barred contribution claims.[42]

The bar order in the present case is substantially more harmful to the barred parties than the one in *Munford*. The bar order here extinguishes independent causes of actions against nondebtors that could possibly make the Securities Claimants whole, and instead, forces them to accept, at best, a distribution of less than 25 percent from the insurance.[43] The true beneficiaries under the settlement are not the Securities Claimants, but rather, the numerous individuals accused of causing their substantial losses through improper conduct. These individuals would be re-

---

**37.** The Liquidating Agent did not introduce or proffer any evidence as to whether any investigation of potential claims against AISLIC has been conducted or whether any other claims against AISLIC may exist.

**38.** For this reason, the Court also could conclude that the settlement is impermissible because the heart of the settlement involves the resolution of claims that the Liquidating Agent has no standing to pursue. *Cf. Carolina Preservation Partners, Inc. v. Weinhold*, 414 B.R. 754 (M.D.Fla.2009) (vacating order approving trustee's settlement with chapter 7 debtor where neither party to agreement had requisite authority under partnership law to encumber partnership property as required under settlement agreement).

**39.** *See generally, In re Vazquez*, 325 B.R. 30, 36 (Bankr.S.D.Fla.2005) ("[U]nder the right

circumstances, creditor support for a proposed settlement is an integral component of the court's inquiry, and in various cases courts have rejected settlements which lacked the approval of the majority of creditors.").

**40.** *Munford*, 97 F.3d at 455.

**41.** *Id.* at 455–56.

**42.** *Id.* at 456.

**43.** The Liquidating Agent did not provide any evidence establishing that the claims to be barred either lacked merit or lacked value to the Securities Claimants.

lieved of all personal liability in exchange for no payment whatsoever. The absence of the payment of any meaningful consideration by the released parties has been a key consideration by courts in considering whether to approve bar orders.[44] Moreover, the settlement provides little value to the Securities Claimants because it does nothing more than evenly distribute the remaining proceeds among the claimants. If the settlement is not approved, all claims against nondebtors will remain intact, and the $1.7 million in policy proceeds will still be available to pay any claims that the Securities Claimants choose to settle (instead of being further depleted on defense costs). The decision to settle or not, however, should rest with each individual Securities Claimant, and not be forced by the Liquidating Agent.[45]

■■■ Finally, the Court finds that the bar order is not necessary for AISLIC to settle the Debtor's indemnity claims under the policy. AISLIC is correct in its assertion that, when multiple insureds are covered by a policy that has insufficient funds to pay all claims, then the insurer has a duty to try to settle as many claims as possible within policy limits.[46] This does not mean, however, that an insurer can expend the remaining policy proceeds on behalf of one insured only if all other insureds are released from their claims. To the contrary, an insurer could be deemed to act in bad faith towards its insured if it refuses to settle simply because all other insureds are not being released as part of the settlement.[47] As applied here, the *Contreras* holding actually protects AISLIC by making clear it does not act in bad faith towards the other insureds by settling with the Debtor, so long as AISLIC tries to obtain releases for the other insureds, but is unsuccessful.[48] In the end, AISLIC is attempting to use the Debtor's bankruptcy to achieve the best result possible for its insureds—complete release for all insureds within the policy limits. This result, however, is not fair and equitable and will not be imposed over the objections of the Securities Claimants.

## *Conclusion*

For the reasons stated above, the Court concludes that neither the settlement nor the bar order may be approved. As such, the Liquidating Agent's Motion will be de-

44. *See, e.g., In re Dow Corning*, 280 F.3d 648, 658 (6th Cir.2002)(citing *In re A.H. Robins Co.*, 880 F.2d 694, 701–702 (4th Cir.1989); *MacArthur v. Johns–Manville, Corp.*, 837 F.2d 89, 92–94 (2d Cir.1988); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir.2000)). *See also In re Transit Group, Inc.*, 286 B.R. 811, 817 (Bankr.M.D.Fla.2002)(refusing to allow third party release where the released parties had not contributed substantial assets but allowing it for one party noting the following testimony: "Put simply, without the contributions of GECC, there would be no Plan and no reorganization.").

45. The fact that only three actions covered by the AISLIC policy have settled postpetition (while policy proceeds have continued to be spent on defense costs) strongly suggests that most Securities Claimants are willing to forego a recovery from the policy in order to continue prosecuting their claims against the nondebtor co-insureds.

46. *See, e.g., Farinas v. Florida Farm Bureau General Ins. Co.*, 850 So.2d 555, 560 (Fla. 4th DCA 2003).

47. *See Contreras v. U.S. Security Ins. Co.*, 927 So.2d 16 (Fla. 4th DCA 2006).

48. *Id.* at 22 ("The majority opinion will benefit insurers by clarifying that, if they are unable to obtain a release for all defendants, they can still settle with one without being in bad faith.") (Klein, J. concurring).

nied, without prejudice to a modified settlement and/or bar order that is not inconsistent with this opinion. The Court will enter a separate order denying the Motion.