WELLS, Judge
(dissents).
I would reverse the $5.2 million dollar judgment against United Automobile Insurance Company for failure to make a prima facie bad faith case. While I fully agree that valid insurance claims must be timely paid and egregious conduct in delaying or denying payment of such a claim is properly sanctioned by an action sounding in bad faith, I find that the instant claim cannot be supported on a mere incantation of the mantra that bad faith is a jury question.
While the facts of this case are tragic, as a matter of law, the insurers’ actions did not constitute bad faith. On the evening of December 9, 2001, Jose Hernandez, while purportedly intoxicated, ran a stop sign in the Redlands section of Miami-Dade County and rammed a sports car driven by Circuit Court Judge Steve Levine. Levine died quickly from horrific injuries sustained in the crash; his passenger, Ms. Maldonado also died. Mr. Hernandez and his passenger, Ruben Soto, were injured.
At the time of the accident, Hernandez was insured by United under a policy which provided coverage in the amount of $10,000 per person for bodily injuries, with a $20,000 limit per incident, and in amount of $10,000 for property damage. A little less than two months after this accident, on February 6, 2002, United received notice of this incident from passenger Maldonado’s counsel. Although no notice was received from Levine’s estate, United tendered a check the very next day, February 7, 2002, in the amount of $10,000, the bodily injury policy limits, to Levine’s estate. It accompanied that tender with what may best be described as a general release, releasing Hernandez and all others from all liability from any and all claims arising from this accident. Acceptance of the check was in no manner conditioned on execution and return of the general release.[7]
Two weeks later, on February 22, 2002, counsel for Levine’s estate requested a copy of Hernandez’ policy. Five days later, the policy was provided. Two months later, the estate returned United’s check without explanation. When United in *789 quired as to the reason for this rejection, United was advised by someone in the office of the counsel for the estate that the tender was insufficient and would preclude the estate from taking other actions. No further communications were forthcoming from counsel for the estate regarding the claim, despite phone calls from a United adjuster in April, May, and June.
Although United exceeded its policy limits for bodily injuries by paying out $30,000, it received no claim for property damages and made no tender for damage to the car Levine was driving. On June 16, 2002, the estate sued Hernandez ultimately securing a $5.2 million judgment against him. In November of 2006, Hernandez assigned all of his rights against United to Levine’s estate, which sued United in a single count complaint for bad faith claiming that United failed to timely settle the estate’s claim against Hernandez and that “[h]ad Defendant, UNITED, timely tendered the available policy limits, [the estate] would have accepted the available policy limits and released Hernandez.” (Emphasis added). Following a jury verdict, a final judgment finding that United had acted in bad faith was entered against United, and the underlying judgment against Hernandez for over $5.2 million was assessed against United.
As a matter of law, these facts do not constitute bad faith and as such, the matter should never have gone to a jury. Although United received no notice, claims or demands whatsoever from Levine’s estate, it issued a check to the estate for its bodily injury policy limits within a day of learning of the incident. As a matter of law, this cannot be bad faith.
The fact that this tender was accompanied by a general release also cannot for a number of reasons constitute bad faith. First, acceptance of the tendered check was not conditioned on execution of the release. Because the tender was not conditioned on the release, the estate was free to accept the tender and ignore the release, leaving Hernandez no worse off than he would have been had a check alone been sent. However, had the estate executed the release, Hernandez would have been relieved of any further liability, a result obviously to his benefit. In any event, no matter how viewed, providing a general release along with a check for the policy limits inured solely to Hernandez’ benefit and could not constitute bad faith. If the estate refused to execute the release, Hernandez was no worse off than he was without the release — his insurance had paid up and he was still on the hook for any excess — and if the estate executed the release he was forever off the hook.
As far as the estate’s claim that it would have executed the “one size fits all release,” absolving Hernandez completely from its multimillion dollar claims had United only tendered a check for $10,000 for damage to Levine’s car along with the check for $10,000 for bodily injuries, the record is that the estate never made a property damage claim against the United policy and when United inquired as to why the estate rejected its bodily injury tender, it never explained that it was rejecting the tender because United had not also tendered a $10,000 check for property damage.[8] Rather, instead of negotiating a settlement in good faith by making a counter offer to United’s settlement tender, the estate brought its suit for bad faith.
On these facts, I cannot agree to affirm the instant judgment. Had the estate *790 made a counter offer to United’s settlement offer or offered to settle its claims within policy limits as had the injured parties in Berges v. Infinity Insurance Co., 896 So.2d 665 (Fla.2004), my opinion would be different. But there was no indication whatsoever that Levine’s estate was interested in, much less willing to, settle its multimillion dollar claims against Hernandez for policy limits. And, after United initiated “settlement” discussions by issuing a check for the full amount of its bodily injury coverage, the estate remained mute, never objecting to the notation accompanying the check or the release or making a claim or demand for policy limits for property damages. I therefore cannot see how anything that United did or did not do was the cause of any damage to Hernandez. Absent same, no bad faith claim could exist.
In short, United did everything it could to maximize protection for its insured. Without a demand or claim, it promptly paid an amount exceeding policy limits for bodily injuries; it attempted to secure a release from liability for its insured; and it timely attempted to determine who should be paid and in what amount for property damage. In the end, Hernandez' suffered no damage that he otherwise would not have incurred but for United’s actions. While juries are responsible for determining bad faith claims, it is the responsibility of the courts to treat all litigants which or who come before them on a fair and equal basis. This, of course, applies to insurance companies. It is therefore incumbent on courts to view the facts objectively and, where appropriate, to preclude obviously collusive or contrived claims from moving forward. This action presents just such a case where counsel for an injured party refuses to communicate or negotiate following a good faith offer by an insurer and after dodging information requests via vague responses by office staff, brings an action for bad faith.
As one knowledgeable author on the subject of bad faith claims has confirmed, no bad faith claim exists as a matter of law where a “claimant [has] failed to respond to [an] insurer’s attempts to settle claims within the policy limits. Thus, the courts have properly, effectively, and firmly rejected attempts to justify bad faith claims based on either arbitrary or unrealistic time deadlines, or in response to settlement offers, with which compliance is impossible, or which were not made in a good faith attempt to reach a resolution of the claim.” Rutledge R. Liles, Florida Insurance Bad Faith Law: Protecting Businesses and You, 85 Fla. Bar J. 9 (Mar. 2011)[9] (citing Cardenas v. Geico Cas. Co., 760 F.Supp.2d 1305 (M.D.Fla.2011); Boateng v. Geico Gen. Ins. Co., No. 10-CIV-60147, 2010 WL 4822601 (S.D.Fla. Nov. 22, 2010); Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16 (Fla. 4th DCA 2006) (where the claimant would only agree to release one of two insured in return for payment of policy limits, no bad faith as a matter of law in insurer’s favor to accept that offer)).
As deeply sympathetic as this case is and as in need of a deep pocket as it is, I simply cannot agree that the facts support a bad faith claim. I would reverse on this ground alone.

.Although the statement attached to the check indicated that it was for "all claims” the cover letter clearly stated that the check was for "the bodily injury portion of our policy.”

. In fact, although the car that Levine was driving was titled in his name, it was insured by USAA under a policy held by his wife, Tracy Howard, who made a claim with USAA and was paid $17,500. USAA subsequently sought and received subrogation from United on this claim.

. Rutledge R. Liles, Insurance Bad Faith: The "Setup Myth,” 77 Fla. BJ. 18, 22 (2003) ("Rutledge R. Liles received his B.A. (1964) from Florida State University and his J.D. (1966) from the University of Florida College of Law. He is a board certified civil trial lawyer with more than 36 years of experience. He has served as president of both the Jacksonville Bar Association and The Florida Bar and is a fellow in the American College of Trial Lawyers and the American Bar Foundation.").