824 So.2d 274 (2002)
Ellyn FELDMAN, Appellant,
v.
Karl Kenneth KRITCH and State Farm Mutual Automobile Insurance Company, Appellees.
No. 4D01-3564.
District Court of Appeal of Florida, Fourth District.
August 21, 2002.
*275 Joseph D. Farish, Jr. of the Law Office of Joseph D. Farish, Jr., LLC, West Palm Beach, for appellant.
Patrick B. Flanagan of Flanagan, Maniotis & Berger, P.A., West Palm Beach, for appellee State Farm Mutual Automobile Insurance Company.
SHAHOOD, J.
We reverse the trial court's order denying appellant's motion to enforce settlement agreement, and granting appellee's motion to set aside settlement agreement. We remand for further proceedings consistent with this opinion.
Appellant, Ellyn Feldman, was involved in a car accident with uninsured motorist, appellee, Karl Kritch. Appellant filed a claim for uninsured motorist benefits with her insurer, appellee, State Farm Mutual Automobile Insurance Co. (State Farm). Negotiations regarding appellant's uninsured motorist claim took place pre-suit, but the parties were unable to agree on a settlement amount. State Farm paid Feldman $40,000 pre-suit, which represented the amount of their initial offer to *276 her. State Farm informed appellant's counsel that "[t]he remaining coverage available will be reduced by the amount of this payment and this amount will be credited against any final determination of damages."
Court-ordered mediation failed to reach a settlement. Following the failed mediation, the court entered an Order Setting Jury Trial. The form Order stated "All parties are ordered to participate in mediation and mediation must occur no later than 45 days prior to calendar call and to comply with the attached Uniform Pretrial Order." Thereafter, the parties agreed for another mediation to take place. At the mediation, a settlement was reached, and an agreement, drafted by the mediator, and signed by the parties, stated as follows:
State Farm to pay plaintiff $75,000.00 by 2:00 p.m. on 7/20/01. Plaintiff to execute full release and file dismissal with prejudice. Each side to bear its own fees and costs. Plaintiff to pay all liens and subro rights.
After mediation, State Farm, filed a motion to set aside the settlement agreement on what it perceived as a misunderstanding as to whether the $75,000 was to be offset by the $40,000 previously paid, requiring a payment of only $35,000 as "new money." Appellant then filed a motion to enforce settlement agreement and a response to State Farm's motion to set aside settlement.
At the hearing on the motions, appellant claimed that the mediation was court-ordered, and, therefore, all oral and written communications at mediation were confidential. Despite the parties disagreement over whether the mediation was court-ordered, the court, after hearing the parties' arguments regarding the settlement itself, concluded that there appeared to be a mutual mistake. Notwithstanding such conclusion, the court agreed to hear testimony, including that of the mediator himself, regarding the settlement negotiations.
State Farm's counsel admitted that the settlement agreement signed by the parties during mediation made no mention of State Farm's prior settlement proposal which had been rejected. The mediator also confirmed that the only amount offered by State Farm was $75,000. No discussion was had during mediation regarding an offset to State Farm for the $40,000 previously paid to appellant. Discussions regarding a credit to State Farm occurred just after mediation and postsettlement. At the conclusion of the hearing, the trial court granted State Farm's motion to set aside agreement finding that there was no meeting of the minds. We disagree.
Appellant claims that the trial court exceeded its authority in considering evidence in violation of section 44.102, Florida Statutes, and the Florida Rules of Certified and Court Appointed Mediators, in finding that the settlement agreement did not reflect the mutual intentions of the parties. Because State Farm claimed that there was a mutual mistake, the statutory privilege protecting the confidentiality of all oral and written communications, other than the executed settlement agreement, should not apply. See § 44.102(3), Fla. Stat. (2000); DR Lakes, Inc. v. Brandsmart U.S.A. of West Palm Beach, 819 So.2d 971 (Fla. 4th DCA 2002).
In DR Lakes, this court explained that the reason for confidentiality as to statements made during mediation where a settlement agreement is not reached was obvious. See id. at 974. "Mediation could not take place if litigants had to worry about admissions against interest being offered into evidence at trial, if a settlement was not reached." Id. "Once *277 the parties in mediation have signed an agreement, however, the reasons for confidentiality are not as compelling." Id. In that case, the court held that the confidentiality privilege attached to communications made during court-ordered mediation, did not apply in a motion by a vendor of real estate to enforce terms of settlement agreement reached during mediation, where the vendor claimed that there was a mutual mistake in the form of a clerical error as to the purchase price set forth in the executed settlement agreement. See id. The court went on to state that on remand, in order to be entitled to relief, the vendor would have to establish that the clerical error was a mutual mistake:
When an instrument is drawn and executed which is intended to carry into execution an agreement but which by mistake of the draftsman violates or does not fulfill that intention, equity will reform the instrument so as to conform to the intent of the parties. Relief should be given where, through a mistake of the scrivener, the instrument contains [a]n clerical error or fails to define the terms as agreed on by the parties. (citations omitted).
Id. at 974 (quoting Steffens v. Steffens, 422 So.2d 963, 963 (Fla. 4th DCA 1982)). A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument. See Circle Mortgage Corp. v. Kline, 645 So.2d 75, 78 (Fla. 4th DCA 1994). Such relief, however, is not available if there was a unilateral mistake. See DR Lakes, 819 So.2d at 974 n. 2; see also Limehouse v. Smith, 797 So.2d 15, 17 (Fla. 4th DCA 2001)(a party's performance under a contract is not excused on the basis of unilateral mistake when the mistake is the result of the party's own negligence and lack of foresight, or the other party has relied upon his performance so that rescission would be inequitable.).
Unlike DR Lakes, the evidence adduced at the hearing demonstrated that no mention was made during mediation of an offset of $40,000 to be credited to State Farm. Thus, any mistake was a unilateral mistake on the part of State Farm.
Here, the plain meaning of the words "State Farm to pay plaintiff $75,000.00 by 2:00 p.m. on 7/20/01" are unambiguous and not subject to any other construction or interpretation. Settlements are highly favored as a means to conserve judicial resources, and will be enforced when it is possible to do so. See Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483 (11th Cir.1994); Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985). Settlements are construed in accordance with the rules for interpretation of contracts. See Robbie, 469 So.2d at 1385; Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So.2d 669, 673 (Fla. 1st DCA 1997). When a contract is clear and unambiguous, the court is required to enforce the contract according to its plain meaning. See Limehouse, 797 So.2d at 17; see also BMW of N. Am., Inc. v. Krathen, 471 So.2d 585 (Fla. 4th DCA), review denied, 484 So.2d 7 (Fla.1986). It is never the role of the trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. See Barakat v. Broward County Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000).
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
GUNTHER and FARMER, JJ., concur.