927 So.2d 16 (2006)
Carmen Maria CONTRERAS, as Administrator and Personal Representative of the Estate of Flor Torres Osterman and Guardian for and on behalf of Carmen Lorena Duarte, a minor child, as assignee of Kenneth A. Welt, Trustee, Appellant,
v.
U.S. SECURITY INSURANCE COMPANY, Appellee.
Nos. 4D04-1427, 4D04-4175.
District Court of Appeal of Florida, Fourth District.
March 22, 2006.
Rehearing Denied May 23, 2006.
*17 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, Joseph S. Kashi of Sperry Shapiro & Kashi, P.A., Plantation, and Diego C. Asencio of Diego C. Asencio, P.A., North Palm Beach, for appellant.
David B. Pakula of David B. Pakula, P.A., Pembroke Pines, for appellee.
HAZOURI, J.
Carmen Maria Contreras, as personal representative of the estate of her daughter, Flor Torres Osterman, as guardian of Flor's daughter, and as assignee of the *18 claim of Deana Dessanti, the owner of the vehicle which struck and killed Flor, appeals the final judgment directing a verdict in favor of U.S. Security Insurance Company, Dessanti's insurance carrier, on a claim of bad faith. Contreras also appeals a final cost judgment which was entered against her. We reverse.
This bad faith lawsuit arose out of a tragic automobile accident that occurred on July 17, 1992, when the decedent, Flor Torres Osterman, was walking on the side of a road in a residential area in Broward County when she was hit and killed by a car owned by Deana Dessanti and driven by Arnold Blair Dale. Dale was driving Dessanti's car with her knowledge and permission. At the time of the automobile accident, Dale was driving at a high rate of speed and had consumed alcoholic beverages. He was charged with DUI manslaughter and leaving the scene of an accident with injuries.
Dessanti's vehicle was insured under an automobile liability insurance policy with U.S. Security which provided bodily injury coverage. Dale, although not a named insured, was an additional insured by virtue of being a permissive user of Dessanti's vehicle.
Dessanti reported the accident to U.S. Security on July 21, 1992, and three days later claims adjuster, Marlene Plasencia, was assigned to investigate and handle the claim. On July 28, 1992, Plasencia received a letter from Contreras's attorney, Carlos Velasquez, notifying her of his representation of the decedent's estate.
On August 5, 1992, Velasquez sent a letter to Plasencia in which he made the following demand:
Our investigation to date reveals that Deana Dessanti had given permission to Arnold Blair Dale to drive her vehicle and that at the time of this incident your insured had coverage up to $10,000 per person and $20,000 per accident. If such is the case, I am hereby demanding as counsel for the estate of Flora Torres your tender of the policy limits within fifteen (15) days from the receipt of this correspondence.
On August 13, 1992, Plasencia sent Velasquez a letter tendering the policy limits along with a general release form discharging both Dessanti and Dale and all others who might have claims against them as a result of this accident. On September 23, 1992, Velasquez responded to Plasencia's letter of August 13, rejecting Plasencia's offer of the policy limits due to the inclusion of Dale and all others on the release. Velasquez offered to accept the policy limits in exchange for a release of Dessanti and U.S. Security, but not Dale. The offer was good until October 15, 1992. Velasquez enclosed with the letter a general release form for execution which would release both Dessanti and U.S. Security. Velasquez advised U.S. Security that because of the gravity of Dale's misconduct, the personal representative of the decedent's estate was not willing to settle the claim against Dale and was unwilling to give him a release.
On September 28, 1992, attorney Mike Nuzzo, who had been hired by U.S. Security, wrote a letter to Velasquez at Plasencia's request. The letter stated as follows:
Please be advised that I have been requested by Marlene Plasencia from U.S. Security Insurance Company to respond to your letter dated Sept. 23, 1992. First, please be advised that your aforementioned letter does not acknowledge that the driver Arnold Blair Dale is also an insured (covered person) under the policy of insurance issued by U.S. Security Insurance Company to the named insuredowner Deana A. Dessanti. Of course, you understand that under Florida *19 law Mr. Dale became an insured under the U.S. [sic] Insurance Company policy because at the time of the accident he was operating Ms. Dessanti's 1984 Chevrolet with Ms. Dessanti's consent and permission.
Consequently, pursuant to Florida law U.S. Security Insurance Company is obligated to act in good faith to the named insured/owner Deana Dessanti and to the insured/driver Mr. Arnold Blair Dale. That is the reason that the release provided to you by Ms. Plasencia in her letter dated Aug. 13, 1992 included Mr. Dale.
Please note that U.S. Security agrees that this case is serious, however, U.S. Security must act in good faith to all of its insureds. Therefore you can understand why U.S. Security cannot enter into a release which operates to fully exonerate one insured while not releasing the second insured.[1]
In closing, if you have any additional suggestions as to how this matter can be settled without U.S. Security standing in a position of bad faith to one of its insureds I and U.S. Security would be more than happy to hear your suggestions.
(Emphasis added).
U.S. Security's insurance policy specified as follows with regard to its duty to defend and indemnify:
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an automobile accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
(Emphasis added).
After the deadline set by Velasquez in his letter of September 23, 1992 expired, Contreras filed a wrongful death suit against Dale and Dessanti which ultimately was tried by a jury in December 1994, resulting in a judgment for compensatory damages against Dessanti and Dale for $1,000,000, as well as a punitive damage judgment against Dale in the amount of $110,000 which was later remitted to $5,000. In addition to the final judgment of $1,000,000 entered against Dessanti and Dale, a cost judgment in the amount of $13,143.05 was also entered against Dessanti. This judgment was affirmed by this court in Dessanti v. Contreras, 695 So.2d 845 (Fla. 4th DCA 1997).
Dessanti had filed for bankruptcy prior to the final judgment. After the entry of the final judgment in the wrongful death case, Dessanti's trustee in bankruptcy, Kenneth A. Welt, executed an assignment to Contreras of Dessanti's cause of action for bad faith against U.S. Security. After obtaining the assignment, Contreras filed the bad faith claim and proceeded to trial.
At the close of Contreras's presentation of her evidence in this case, U.S. Security moved for and was granted a directed verdict. In granting U.S. Security's motion for a directed verdict, the trial court was persuaded by Nuzzo's argument that U.S. Security was obligated to act in good faith to both Dessanti and Dale as covered insureds, and therefore, U.S. Security could not enter into a settlement and release which operated to totally exonerate Dessanti without releasing Dale. In arriving at the conclusion that U.S. Security *20 was entitled to a directed verdict, the trial judge stated:
It [the offer to settle with Dessanti but not Dale] immediately places the insurance company then in the Hobson's choice. If they don't agree to that, they're sued for bad faith, and if they do agree to it, they're sued for bad faith. If they agree to it and cut Dale loose, the Plaintiff simply takes an assignment from Dale. If they don't agree to it and leave Dessanti in, the Plaintiff simply takes an assignment from Dessanti. The Plaintiff's protected either way and the insurance company loses either way, and I don't think that's the state of the law. By creating it that way, what, in essence, the Court is permitting is it's letting the Plaintiff dictate whether a bad faith claim arises as opposed to looking at the conduct of the insurance company. It creates an automatic bad faith. Either Dessanti should have been protected and wasn't, in which case she has a bad faith claim, or Dale is cut loose and the insurance company had a duty to defend him, in which case he has a bad faith claim, and the insurance company is sitting squarely in the middle with no way to turn.
The standard of review on appeal of the trial court's ruling on a motion for directed verdict is de novo. Flagstar Cos. v. Cole-Ehlinger, 909 So.2d 320 (Fla. 4th DCA 2005). In reviewing the granting of a directed verdict, an appellate court must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only when no proper view of the evidence could sustain a verdict in favor of the nonmoving party. See Decarlo v. Griffin, 827 So.2d 348, 350 (Fla. 4th DCA 2002).
Contreras argues that the trial court erred in concluding that the issue in this case is whether an insurer which owes a duty of good faith to two covered insureds, can be held in bad faith for offering its policy limits and requiring a release of both of its insureds where the claimant is unwilling to settle with one of the insureds. Contreras asserts that is not the issue. She asserts that the issue is, whether an insurer acts in bad faith in refusing to pay a reasonable settlement demand in order to obtain a release of one of its two insureds, where the claimant refuses to settle with the other insured. We agree with Contreras's formulation of the issue at hand because under our case law the gravamen of what constitutes bad faith is whether under all the circumstances an insurer failed to settle a claim against an insured when it had a reasonable opportunity to do so.[2]
When an insured like Dessanti has surrendered to the insurer all control in the handling of the claim, including all decisions with regard to litigation and settlement, which Dessanti must do under the terms of the insurance policy, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interest of its insured. See Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla.1980). In Boston Old Colony, the *21 Florida Supreme Court delineated the standard of care that an insurer must exercise when handling claims against an insured:
This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. The question of failure to act in good faith with due regard for the interests of the insured is for the jury.
Id. at 785 (citations omitted). This duty of good faith has been reaffirmed in numerous cases decided since Boston Old Colony and as recently as in the Florida Supreme Court's decision in Berges v. Infinity Insurance Co., 896 So.2d 665 (Fla.2004).
The issue of whether an insurance company can be held liable for bad faith where there was a demand to settle with one insured but not release all insureds is a question of first impression in this state. Nevertheless, the standard for what constitutes bad faith in light of the circumstances in the instant case can be judged based upon the principles set forth in Boston Old Colony.
U.S. Security argues that it had an obligation to act in good faith not only towards Dessanti but also towards Dale, because Dale was also covered under the terms of the policy as a permissive driver of Dessanti's vehicle. Clearly, U.S. Security did have an obligation to act in good faith towards both of the insureds. In an effort to fulfill its obligation of good faith, U.S. Security attempted to secure, in exchange for the policy limits, a release for both Dessanti and Dale. Because of the gravity of Dale's misconduct, Contreras was not willing to settle the claim against Dale. Having attempted to secure a release for Dale without success, U.S. Security fulfilled its obligation of good faith towards Dale. Once it became clear that Contreras was unwilling to settle with Dale and give him a complete release, U.S. Security had no further opportunity to give fair consideration to a reasonable settlement offer for Dale. Since U.S. Security could not force Contreras to settle and release Dale, it did all it could do to avoid excess exposure to Dale.
Having fulfilled its obligation to Dale, U.S. Security thereafter was obligated to take the necessary steps before Contreras's offer expired to protect Dessanti from what was certain to be a judgment far in excess of her policy limits. Under the terms of its policy, had U.S. Security paid out its limits, its duty to settle or defend would have ceased. See Underwriters Guarantee Ins. Co. v. Nationwide Mut. Fire Ins. Co., 578 So.2d 34 (Fla. 4th DCA 1991). In Underwriters, a non-settling insured alleged that the insurer's policy limits settlement on behalf of only one insured constituted a breach of the contract as to the non-settling insured. This court held that in that instance, the insured did not have a duty to defend the remaining, non-released insured. We reasoned that because the policy relieved the insurer of its duty to defend any suit once it had paid its policy limits, the insurer was not obligated by its contract to continue to defend the additional insured after payment of the *22 policy limits in settlement for its named insured. Id. at 35.
The trial court's concern of placing U.S. Security in a Hobson's choice is not well-founded. The argument that U.S. Security, as a matter of law, could not settle the claim only against Dessanti because it would expose itself to a claim of bad faith by Dale is an illusory one. U.S. Security attempted to settle for both Dessanti and Dale and get a complete release for both of them. A release was unattainable due to Contreras's adamant refusal to settle with Dale. Contreras's refusal is understandable. The horrific nature of the accident and Dale's misconduct of drinking and driving and leaving the scene of an accident could easily account for the animus directed toward Dale. In any event, the focus in a bad faith case is not on the actions of the claimant, but rather on those of the insurer in fulfilling its obligation to the insured. See Berges, 896 So.2d at 677.
We reverse the judgment in favor of U.S. Security and the cost judgment and remand for a new trial.
Reversed and Remanded.
WARNER, J., concurs.
KLEIN, J., concurs specially with opinion.
KLEIN, J., concurring specially.
I agree with the majority opinion. I am writing separately to address the insurer's argument that this reversal will lead to more bad faith litigation, as well as its alternative argument for affirmance.
The insurer's position is that if it could not get a release for both of the insureds, it would have been guilty of bad faith in settling for only one and this will create more bad faith litigation. The majority of jurisdictions which have addressed the release problem have rejected that proposition. In re Vitek, Inc., 51 F.3d 530 (5th Cir.1995); Bohn v. Sentry Ins. Co., 681 F.Supp. 357 (E.D.La.1988), aff'd, 868 F.2d 1269 (5th Cir.1989); Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co., 959 S.W.2d 864 (Mo.App.1997); Anglo-American Ins. Co. v. Molin, 670 A.2d 194 (Pa. Commw.Ct.1995); Pekin Ins. Co. v. Home Ins. Co., 134 Ill.App.3d 31, 89 Ill.Dec. 72, 479 N.E.2d 1078 (1985). Two jurisdictions have the contrary view. Smoral v. Hanover Ins. Co., 37 A.D.2d 23, 322 N.Y.S.2d 12 (1971); and Strauss v. Farmers Ins. Exchange, 26 Cal.App.4th 1017, 31 Cal. Rptr.2d 811 (1994).
If an insurer is given a reasonable period of time in which to settle, as in this case, and it is entirely clear that within that time the plaintiff is not going to release the driver, the insurer as a matter of law cannot have breached a duty of good faith to the driver. The majority opinion will benefit insurers by clarifying that, if they are unable to obtain a release for all defendants, they can still settle with one without being in bad faith.
The insurer has advanced an alternative argument for affirmance, which the trial court did not consider. That argument relies on a letter dated October 9, 1992, addressed to the insurer, by a lawyer privately retained by both the owner and her fiancé, the driver. In the letter the owner allegedly asserted that if the insurer settled without obtaining a release of both the owner and the driver, the insurer would be acting in bad faith. This letter was written about one week before the deadline for accepting the plaintiff's offer to take the policy limits. The only record reference for this letter is to a page of the transcript, on which there was mention of it by a witness. The letter was not in evidence and not considered by the trial court when it directed a verdict at the end of the claimant's case.
The insurer argues that based on this letter it was entitled to a directed verdict, *23 citing Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla.1980). In that case a directed verdict was granted for an insurer on a bad faith claim based on the insured's unwillingness to settle with the plaintiff, where the insurer wanted to settle. Because this record does not reflect the facts surrounding the letter, which would have presumably become apparent if the insurer had presented its evidence at trial, we are unable to determine the legal significance of it. If I were the trial judge on remand, I would allow the case to go to the jury, because a verdict for the insurer could obviate the need for ruling on the legal effect of the letter. Ditlow v. Kaplan, 181 So.2d 226 (Fla. 3d DCA 1965) (commending the trial court for not directing a verdict in favor of the defendant until after the jury returned a verdict for the plaintiff).
NOTES
[1] There were no Florida cases dealing directly with this contention. In fact, to the extent this point has been dealt with in other jurisdictions, the weight of authority is to the contrary. Minkoff & Hamilton, Multiple Insureds: Can A Good Faith Settlement Terminate A Right To A Defense? FOR THE DEFENSE, 8 (May 2000).
[2] See Florida Standard Civil Jury Instruction MI 3.1 which provides in relevant part:

INSURER'S BAD FAITH FAILURE TO SETTLE
a. Issue:
The issue for your determination is whether (defendant) acted in bad faith in failing to settle the claim [of] [against] (insured). An insurance company acts in bad faith in failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his][her][its] [their] interests.